Eric Andrew Mercer, SBN 248707
LAW OFFICE OF ERIC ANDREW MERCER
770 L Street, Suite 950
Sacramento, CA 95814
Telephone:      (916) 361-6022
Facsimile:      (916) 361-6023
Email:          eric@ericmercerlaw.com

Attorney for Plaintiff, Debra London

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DEBRA LONDON, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10 inclusive,<br><br>       Defendants. | Case No. 2:17-cv-00687-KJM-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS**<br><br>Date:        September 8, 2017<br>Time:        10:00 a.m.<br>Courtroom:  3, 15th Floor<br>Judge:      Honorable Kimberly J. Mueller<br><br>Complaint Filed: March 30, 2017<br>Trial Date:  None Set |

LAW OFFICE OF ERIC ANDREW MERCER

1

# TABLE OF CONTENTS

2    **TABLE OF CONTENTS** ................................................................................ ii

3    **TABLE OF AUTHORITIES** ...................................................................... iii

4    I.    INTRODUCTION ........................................................................................1

5    II.    STATEMENT OF FACTS ...........................................................................2

6      A.    Facts Relevent to This Action and Procedural Posture.........................2

7      B.    Plaintiff's Bankruptcy and the *In re Green* National Bankruptcy Settlement Agreement ..... 4

8    III.    ARGUMENT .................................................................................................5

9      A.    The *In re Green* National Bankruptcy Settlement Related to Plaintiff's Prior Bankruptcy

10    Does Not Preclude The Present Claims ...............................................................6

11      B.    Plaintiff States An HBOR Claim Under Section 2924.17 .......................7

12        1.    Defendant's Violations of California's Homeowners Bill of Rights Are Material ...........8

13      C.    Plaintiff States A Rosenthal Act Claim ...............................................9

14      D.    Plaintiff States an ECOA Notice Claim..............................................10

15        2.    Wells Fargo Is A Creditor Under The ECOA And Applications For Loan Modification

16    Are Applications For Credit Under The ECOA .........................................12

17        3.    Wells Fargo Violated ECOA by Revoking Loan Modification.......................12

18      E.    Plaintiff States a UCL Claim ...............................................................13

19        1.    Plaintiff Properly Alleges Injury-in-Fact..........................................13

20        2.    Plaintiff Sufficiently Alleges "Unlawful, Unfair and Fraudulent" Practices...................15

21    IV.    CONCLUSION.............................................................................................15

22

23

24

25

26

27

28

LAW OFFICE OF ERIC ANDREW MERCER

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) ........................ 14

5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) .............................................................. 5

6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................. 6

7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999

8

........................................................................................................................................ 19

9

*Cooksey v. Select Portfolio Servicing, Inc.,* 2014 U.S. Dist. LEXIS 132074 (E.D. Cal. Sept. 17,

10

2014) ................................................................................................................................. 15

11

*Colbert v. Sage Point Lender Servs., LLC*, 2014 U.S. Dist. LEXIS 178468 (E.D. Cal. Dec. 29,

12

2014) ................................................................................................................................... 9

13

*Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 2013 (9th Cir. 2013) ...................................... 12

14

*Davis v. Scherer*, 468 U.S. 183 (1984) .......................................................................................... 5

15

*Day v. American Home Mortgage Servicing*, 2010 U.S. Dist. LEXIS 63033, at *7 (E.D. Cal. 2010)

16

........................................................................................................................................ 12

17

*DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 119 (N.D. Cal. 2010) ................................... 19

18

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992)......................................................6

19

*Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996) ................................................... 14

20

*Errico v. Pacific Capital Bank*, 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010) ............................. 14

21

*Esquivel v. Bank of Am., N.A.,* 2013 U.S. Dist. LEXIS 153683 (E.D. Cal. Oct. 25, 2013)............. 12

22

*Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983) ........................ 14

23

*Flores v. Nationstar Mortg. LLC,* 2014 U.S. Dist. LEXIS 12662 (C.D. Cal. Jan. 6, 2014)............... 8

24

*Garcia v. PNC Mortg.*, 2015 U.S. Dist. LEXIS 15422 (N.D. Cal. Feb. 9, 2015)............................. 9

25

*Green v. Wells Fargo Bank, N.A.*, 2015 WL 2159460, at *3 (N.D. Cal. May 7, 2015) .................. 10

26

*Heflebower v. JPMorgan Chase Bank, NA*, 2014 U.S. Dist. LEXIS 29777 (E.D. Cal. Mar. 3, 2014)

27

........................................................................................................................................ 11

28

*Hendricks v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 49118, (C.D. Cal. Apr. 14, 2015)..10

MPA IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS

LAW OFFICE OF ERIC ANDREW MERCER

*Hestrin v. Citimortgage, Inc.*, 2015 U.S. Dist. LEXIS 23547, at *8 n.4 (C.D. Cal. Feb. 25, 2015)... 9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) ...................................................................................................................................... 6

*Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (Cal. App. 4th Dist. 2013)........... 18

*Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002) ............................................................................. 17

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) ....................................................... 17

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. Cal. May 4, 2001).............................................. 5

*Mackensen v. Nationstar Mortg. LLC*, 2015 U.S. Dist. LEXIS 55608 (N.D. Cal. Apr. 28, 2015) . 10, 11

*Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988)............................................................ 6

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) .............................................. 6

*Rabb v. BNC Mortgage, Inc.*, 2009 U.S. Dist. LEXIS 92061, at *2 (C.D. Cal. Sept. 21, 2009)...... 18

*Rahbarian v. JP Morgan Chase*, 2015 U.S. Dist. LEXIS 63523, 7-8 (E.D. Cal. May 13, 2015). ... 11

*Reyes v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 2235, 2011 WL 30759 ......................... 12

*Rizk v. Residential Credit Sols., Inc.*, 2015 U.S. Dist. LEXIS 20179 (C.D. Cal. Feb. 10, 2015)..... 10

*Rockridge Trust v. Wells Fargo NA*, 2014 U.S. Dist. LEXIS 22234 (N.D. Cal. Feb. 19, 2014)...... 11

*Rosenfeld v. JPMorgan Chase Bank*, N.A., 732 F. Supp. 2d 952, 973 (N.D. Cal. 2010) ............... 18

*Salazar v. U.S. Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 49172, at *7 (C.D. Cal. Apr. 6, 2015) ... 10

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................................................................... 5

*Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal. 2013) .................................... 13, 14, 15

*Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. Cal. 2013) .......................................... 1

*Schlegel v. Wells Fargo Bank, NA (In re Schlegel)*, 720 F.3d 1204 (9th Cir. Cal. 2013) ............... 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ................ 6

*Schrupp v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 91177 (E.D. Cal. July 13, 2016)..... 1, 8

*Singh v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 63127 (E.D. Cal. May 1, 2013)........................ 8

*Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011).................................................................. 20

*Sullivan v. Wash. Mut. Bank, FA*, No, 2009 U.S. Dist. LEXIS 104074 at *4-5 (N.D. Cal. Oct. 23, 2009) ................................................................................................................................................ 18

LAW OFFICE OF ERIC ANDREW MERCER

MPA IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS

*Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986) ..........................................14

*Vanduzen v. Homecomings Financial*, Case No., 2010 U.S. Dist. LEXIS 46106 ..........................13

*Vasquez v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 161244 at *13 (N.D. Cal. Nov. 12, 2013)..16

*Walters v. Fidelity Mortgage of California, Inc.*, 730 F.Supp.2d 1185 (E.D. Cal. 2010) ...............13

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) .................................6

*West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App. 4th Dist. 2013) ........19

**STATUTES**

12 C.F.R. § 202.2 ...........................................................................................................................12

12 C.F.R. § 202.2(c)(2)(ii) .............................................................................................................13

15 U.S.C. § 1691(d)(2)(A)-(B) .......................................................................................................13

15 U.S.C. § 1691(d)(6) ....................................................................................................................13

15 U.S.C. § 1691a(e)........................................................................................................................12

Cal. Civ. Code § 2923.55 ..................................................................................................................8

Cal. Civ. Code § 2924.12 ..................................................................................................................7

Cal. Civ. Code § 2924.12(a)(1 .........................................................................................................9

Cal. Civ. Code § 2924.17(a) ..............................................................................................................8

Cal. Civ. Code § 2924.17(b) .............................................................................................................8

Cal. Bus. & Prof. Code § 17200 ......................................................................................................16

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................................................................................................5

LAW OFFICE OF ERIC ANDREW MERCER

MPA IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS

## I.      INTRODUCTION

Wells Fargo Bank, N.A. ("Wells Fargo") attempted to conduct a foreclosure sale on Ms. London's family home despite the fact that she made all of the payments in accordance with the Modification Agreement.  Wells Fargo was only prevented from doing so when this Court issued a temporary restraining order the day before the foreclosure sale.  Wells Fargo now brings this Motion to Dismiss (the "Motion") so that it can proceed with foreclosure.  This case is similar to other cases where Wells Fargo failed to honor modification agreements after bankruptcy.  *See*, *e.g.*, *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204 (9th Cir. Cal. 2013); *Schrupp v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 91177 (E.D. Cal. July 13, 2016).

Effective June 30, 2009, Plaintiff, Ms. London, entered into a modification agreement with Wachovia Mortgage, FSB on the family home that she inherited from her father ("Modification Agreement").  After Plaintiff became delinquent under the Mortgage Agreement, she filed a Chapter 13 bankruptcy, in 2011, to pay her arrears and become current.  Plaintiff paid all 60 of the required 60 bankruptcy plan payments in accordance with the Bankruptcy Trustee's instructions.  Her last payment under the plan occurred in January 2016.

Beginning in February 2016, Plaintiff began making payments directly to Wells Fargo who acquired the servicing rights to Plaintiff's loan during bankruptcy.  Wells Fargo accepted Plaintiff's monthly payments for February, March, April and May of 2016.  However, in June 2016, Wells Fargo refused to accept Ms. London's payment.  Wells Fargo claimed that Ms. London failed to pay the post-bankruptcy monthly payments from January to May, 2016.  This is false.  Ms. London made all of the required post-bankruptcy payments in accordance with the Modification Agreement.  Plaintiff has spent over six months requesting that Wells Fargo correct its error and accept payments under the Modification Agreement many times.  Wells Fargo failed to correct its error.

Plaintiff then filed a complaint on March 30, 2017, alleging (1) Breach of Contract, (2) Promissory Estoppel, (3) Violations of California's Homeowners Bill of Rights, (4) the Rosenthal Fair Debt Collection Practices Act, (5) Violations of the Equal Credit Opportunity Act, and (6)

1   Unfair Business Practices (the "Complaint" or "Compl.").

2       In its Motion, Wells Fargo essentially argues that a national settlement agreement between

3   the Department of Justice's U.S. Trustee Program and Wells Fargo precludes all of the present

4   claims.  However, the present action has nothing to do with claims subject to the settlement. The

5   Complaint, in this action, identifies wrongful actions, including an unlawful attempt to foreclose,

6   taken by Wells Fargo *after* the dismissal of Plaintiff's bankruptcy. Wells Fargo, then, in its Motion

7   ignores controlling case law to conclude that even if the national settlement agreement does not

8   preclude Plaintiff's claims, which it does not, the claims nonetheless fail.

9       Plaintiff opposes the Motion because the national settlement agreement related to

10  bankruptcy does not preclude Plaintiff's current claims and could not preclude the claims related to

11  the unlawful actions taken by Wells Fargo after dismissal of the bankruptcy under controlling

12  Ninth Circuit case law.

13  **II.      STATEMENT OF FACTS**

14      **A.     Facts Relevent to This Action and Procedural Posture**

15      Ms. London owns and lives at her home at 16355 Targowski Lane, Tracy, California 95304

16  (the "Subject Property"). Compl. at ¶ 22.  Effective June 30 2009, Plaintiff entered into a

17  modification agreement with Wells Fargo ("Modification Agreement"), which required monthly

18  payments with the schedule as stated in the Modification Agreement. Compl., Exhibit 1.

19      On or about January 2, 2011, Plaintiff filed a Chapter 13 Bankruptcy Action (the

20  "Bankruptcy) after she became delinquent under the Modification Agreement.  *Id*. at ¶ 24.  Plaintiff

21  made all sixty of the required sixty bankruptcy plan payments as directly by the Bankruptcy

22  Trustee.  *Id*. at ¶ 25.  She made her last payment to the Bankruptcy Trustee on January 14, 2016.

23  Id.  As a result of making all payments under the Bankruptcy plan, Plaintiff became current under

24  the Modification Agreement.  *Id*.

25      On or about February 26, 2016, Plaintiff made her first post-bankruptcy monthly payment

26  in the amount of $5,896.41 directly to Wells Fargo, which acquired the servicing rights to

27  Plaintiff's loan during bankruptcy.  *Id*. at ¶¶ 26.  Wells Fargo representative "Katrina" received the

28  payment.  *Id*.  Plaintiff made her second post-bankruptcy monthly payment, for March, in the

Law Office of Eric Andrew Mercer

2

1  amount of $5,896.41.  *Id*. at ¶ 27.  Wells Fargo representative "Maria" received the payment.  *Id*.

2  Plaintiff made her third post-bankruptcy monthly payment, for April, in the amount of $5,391.18.

3  *Id*. at ¶ 28. Wells Fargo representative "Marian" received the payment.  *Id*.  Plaintiff made her

4  fourth post-bankruptcy monthly payment, for May, in the amount of $5,391.18.  *Id*. at ¶ 29.

5          However, when Plaintiff attempted to made her fifth post-Bankruptcy monthly payment, for

6  June, in the amount of $5,391,18, Wells Fargo representative "Jyoti" refused to accept the

7  payment.  *Id*. at ¶ 30.

8          Over the next six months, Wells Fargo provided a number of contradictory messages about

9  the status of the Ms. London's loan including, but not limited to, that Ms. London failed to make

10 her monthly payments.  *Id*. at ¶ 31.  This is false.  *Id*.  Ms. London made all of her post-bankruptcy

11 payments.  *Id*.  Wells Fargo, alternatively, stated that it would investigate and correct the error

12 causing the rejection of the payment under the Modification Agreement and, then, refused to

13 correct the error and, then, agree to correct the error.  *Id*.

14         On the monthly mortgage statement dated October 31, 2016, Wells Fargo stated that "[Ms.

15 London's] loan has been referred to foreclosure."  *Id*. at ¶ 32.  Wells Fargo claimed that the amount

16 due on the account was $62,807.22.  *Id*. Wells Fargo claims that missed monthly payments from

17 January to October 2016 comprises the amount due on the account.  *Id*.

18         On or about November 18, 2016, Wells Fargo caused to be filed a Notice of Default with

19 amount stated as owed as of November 17, 2016 as $63,002.22.  *Id*. at ¶ 33.  This amount is based

20 on alleged missed payments from "1/15/16-10/15/16".  *Id*. at ¶ 32.  But Ms. London made the

21 February through May 2016 payments.  *Id*. at ¶¶ 26-29.  And Wells Fargo refused to accept any

22 further payments.  *Id*. at ¶¶ 30, 35.

23         Ms. London has requested that Wells Fargo correct its error and accept payments under the

24 Modification Agreement for months.  *Id*. at ¶ 35. Instead, Defendants reacted to Plaintiff's requests

25 with inaction, obfuscation, and apathy.  *Id*.  Adding insult to injury, on or about March 1, 2017,

26 Wells Fargo scheduled a trustee sale to occur on April 5, 2017.  *Id*. at ¶ 34.

27         Ms. London filed the present action on March 30, 2017.  *See*, Dkt. No. 1.  This Court

28 granted her request for temporary restraining order on April 4, 2017.  Dkt. No. 14.  On June 15,

Law Office of Eric Andrew Mercer

3

2017, this Court entered an Order for Stay of Foreclosure during the pendency of this case in accordance with a request filed by the parties.  Dkt. No. 23.

**B.    Plaintiff's Bankruptcy and the *In re Green* National Bankruptcy Settlement Agreement**

The following facts are irrelevant to the present action.  However, Plaintiff addresses them here in an effort to counter Wells Fargo's attempt to muddle the issues in its Motion.  On November 5, 2015, the Department of Justice announced a national settlement between the U.S. Trustee Program and Wells Fargo to refund $81.6 million to homeowners that overpaid in bankruptcy.[1]  The national settlement agreement was entered on November 19, 2015.[2]

The settlement terms required Wells Fargo to determine which homeowners were affected by Wells Fargo's unlawful bankruptcy actions and to issue mostly credits, but included cash for certain "…homeowners paid more than the actual amount due" in bankruptcy.

Plaintiff acknowledges she received two separate checks totaling the amount of $8,622.82 as a result of this settlement. *See*, Dkt. 19-1 at ¶ 26.  However, these payments have bearing on the present action and the claims in the Complaint.  The settlement concerned actions taken by Wells Fargo in bankruptcy; not Wells Fargo's unlawful post-bankruptcy actions alleged in Plaintiff's Complaint.

Wells Fargo appears to tacitly make a factual assertion that Plaintiff failed to make all of her payments in bankruptcy.  Motion at 2:15-18; RJN, Exh. 1.  Plaintiff strongly objects to Wells Fargo's attempt to confuse this issue.  First, this is a disputed fact, and is directly contradicted by Plaintiff's Complaint.  Compl. at ¶ 25.  As such, this Court cannot take judicial notice of this assertion.  *See, Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. Cal. May 4, 2001) (finding a court may take judicial notice of another court's documents, but not of the truth of the facts recited therein).  Second, Wells Fargo filed contradictory Responses to Notice of Final Cure Payment.  *See* Plaintiff's Objections to Request for Judicial Notice In Support of Wells Fargo's Motion to Dismiss.  Finally, this assertion is refuted by the fact that Wells Fargo sent $8,622.82 because she

LAW OFFICE OF ERIC ANDREW MERCER

---

[1] https://www.justice.gov/opa/pr/us-trustee-program-reaches-816-million-settlement-wells-fargo-bank-na-protect-homeowners
[2] https://www.justice.gov/opa/file/794841/download

1   overpaid in bankruptcy, not because she underpaid.

2   **III.    ARGUMENT**

3       Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

4   only if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The

5   question is not whether a plaintiff will prevail in the action, but whether it is entitled to offer

6   evidence in support of its claim. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974), overruled on other

7   grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

8       District courts must consider whether non-conclusory allegations "plausibly give rise to an

9   entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). To survive a Rule 12(b)(6)

10  motion, a complaint need not contain detailed factual allegations; rather, it must plead "enough

11  facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

12  544, 570 (2007); *see also Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994)

13  (courts must assume that all general allegations "embrace whatever specific facts might be

14  necessary to support them"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir.

15  2003) (at pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer

16  standing upon him")(citations omitted).

17      On a Rule 12 motion the Court may only consider "the facts alleged in the complaint,

18  documents attached to the complaint, documents relied upon but not attached to the complaint

19  when authenticity is not contested, and matters of which the court takes judicial notice." *Parrino v.*

20  *FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).  *See In re Static Random Access Memory*

21  *(SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (denying a motion to dismiss

22  where the defendant argued in a declaration that claims against him were time-barred).

23      When the complaint is dismissed for failure to state a claim, "leave to amend should be

24  granted unless the court determines that the allegation of other facts consistent with the challenged

25  pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture*

26  *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Indeed, leave to amend is only really properly denied

27  "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th

28  Cir. 1992).

LAW OFFICE OF ERIC ANDREW MERCER

5

**A.**      **The *In re Green* National Bankruptcy Settlement Related to Plaintiff's Prior Bankruptcy Does Not Preclude The Present Claims**

Wells Fargo first argues that a national bankruptcy settlement precludes Plaintiff's present claims. Motion at 4. However, the present action concerns the actions that Wells Fargo took *after* bankruptcy, not during the bankruptcy. *See*, Compl. at ¶¶ 26-35

Wells Fargo's main argument mischaracterizes Plaintiff's Complaint and conflates Plaintiff's payments made *during bankruptcy* to the bankruptcy trustee with Plaintiff's payments made directly to Wells Fargo *after the bankruptcy*. Motion at 4. While Plaintiff filed a declaration in this matter indicating that she received payments under the settlement, she did so in an effort to demonstrate to the Court that Wells Fargo has a history of erroneous record keeping with regard to her mortgage; not as a basis for any claim in the current action. *See*, Dkt. 19-1 at ¶ 26 ("Based on information and belief, Wells Fargo seems to have had erroneous record keeping with regard to my loan. In fact, Wells Fargo has refunded me $8,622.82 because I overpaid on my mortgage loan in bankruptcy"). Indeed, Plaintiff makes clear in the same declaration that the basis for her claims are related to her post-bankruptcy payments. *Id*. at ¶ 14 ("On or about July 1, 2016, I contacted Wells Fargo and requested that it accept my regular monthly mortgage payment in accordance with the Modification Agreement. Wells Fargo refused, stating that I owed approximately $40,000.00 due to missed payments from January to May of 2016. This is false, I made those payments…").

To be clear, this action concerns Wells Fargo's erroneous assertion that Ms. London failed to make her regular monthly payments in accordance with the Modification Agreement *after bankruptcy*. Compl. at ¶ 39 ("Plaintiff performed the obligations under Modification Agreement. She fully performed her obligations making timely post-Bankruptcy monthly payments in the amount required under the Modification Agreement").

The Court should reject Wells Fargo's attempt to mischaracterize Plaintiff's Compliant and Wells Fargo's argument that issues related to a prior bankruptcy preclude the present claims. Indeed, this Court has previously rejected Wells Fargo's argument that a borrower's prior bankruptcy precluded similar claims. *See, Schrupp v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 91177 (E.D. Cal. July 13, 2016) ("The bankruptcy proceedings therefore did not prevent the parties from entering into a separate modification agreement").

LAW OFFICE OF ERIC ANDREW MERCER

6

1   Since this is Wells Fargo's only argument in support of its Motion regarding Plaintiff's

2   claim for breach of contract and promissory estoppel, the Court should deny Wells Fargo's Motion

3   as to these claims.

4   **B.      Plaintiff States An HBOR Claim Under Section 2924.17**

5   California's Homeowner Bill of Rights ("HBOR"), which took effect January 1, 2013,

6   reformed aspects of the state's nonjudicial foreclosure process by amending the California Civil

7   Code to prohibit deceptive and abusive home foreclosure practices. *See Flores v. Nationstar Mortg.*

8   *LLC,* 2014 U.S. Dist. LEXIS 12662 (C.D. Cal. Jan. 6, 2014); *Singh v. Bank of Am., N.A.*, 2013 U.S.

9   Dist. LEXIS 63127 (E.D. Cal. May 1, 2013).

10   Under Section 2924.12, a private right of action is available for violations of the new

11   provisions, including sections 2923.55 and 2924.17.  Available remedies under Section 2924.12

12   depend upon whether a trustee's deed has or has not been recorded:

13   (a) (1) If a trustee's deed upon sale has not been recorded, a borrower
14   may bring an action for injunctive relief to enjoin a material violation
     of Section . . . 2923.55 and 2924.17.

     (2) Any injunction shall remain in place and any trustee's sale shall
15   be enjoined until the court determines that the mortgage servicer,
     mortgagee, trustee, beneficiary, or authorized agent has corrected and
16   remedied the violation or violations giving rise to the action for
     injunctive relief. An enjoined entity may move to dissolve an
17   injunction based on a showing that the material violation has been
     corrected and remedied.

18   Cal. Civ. Code § 2924.12.

19

20   Section 2924.17 provides that

21   a notice of default, notice of sale, assignment of a deed of trust, or
     substitution of trustee recorded by or on behalf of a mortgage
21   servicer in connection with a foreclosure subject to the requirements
     of Section 2924, or a declaration or affidavit filed in any court
22   relative to a foreclosure proceeding shall be accurate and complete
     and supported by competent and reliable evidence.

23

24   Cal. Civ. Code § 2924.17(a). The section imposes an obligation on the mortgage servicer to

25   "ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default

26   and the right to foreclose, including the borrower's loan status and loan information." Cal. Civ.

27   Code § 2924.17(b).

28   Plaintiff alleges here that Defendant violated this section by recording a notice of default

LAW OFFICE OF ERIC ANDREW MERCER

7

1   and notice of trustee sale without ensuring their accuracy.  See, Compl. at ¶¶ 31-33, 52.  Plaintiff

2   also alleges Wells Fargo never sent her the notice required by HBOR that a borrower may request a

3   copy of the borrower's payment history. Cal. Civ. Code § 2923.55; Compl. at ¶¶ 49, 51.

4          **1.**    ***Defendant's Violations of California's Homeowners Bill of Rights Are Material***

5         Wells Fargo argues that Plaintiff's HBOR claim fails because Plaintiff failed to show how

6   such violations are "material."  Motion at 6.  As to Defendant's argument, there is little case law

7   defining the statute's term "material." Courts that have considered the issue take divergent

8   approaches. Some have concluded that materiality is a factual question that should not be resolved

9   on a motion to dismiss. *See, e.g., Hestrin v. Citimortgage, Inc.*, 2015 U.S. Dist. LEXIS 23547, at

10   *8 n.4 (C.D. Cal. Feb. 25, 2015); *Garcia v. PNC Mortg.*, 2015 U.S. Dist. LEXIS 15422 (N.D. Cal.

11   Feb. 9, 2015). Others have suggested that every violation that contravenes the purpose of HBOR is

12   a material violation. *See, e.g., Green v. Wells Fargo Bank, N.A.*, 2015 WL 2159460, at *3 (N.D.

13   Cal. May 7, 2015); *Hendricks v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 49118, (C.D. Cal.

14   Apr. 14, 2015); *Rizk v. Residential Credit Sols., Inc.*, 2015 U.S. Dist. LEXIS 20179 (C.D. Cal. Feb.

15   10, 2015). Still others have considered whether it is "plausible" that the violation caused the

16   plaintiff to suffer damages. *See, e.g., Mackensen v. Nationstar Mortg. LLC*, 2015 U.S. Dist. LEXIS

17   55608 (N.D. Cal. Apr. 28, 2015) (stating that but for defendant's alleged wrongdoing, plaintiff

18   "may have been able to keep [his] house") (citation omitted); *Salazar v. U.S. Bank Nat'l Ass'n*,

19   2015 U.S. Dist. LEXIS 49172, at *7 (C.D. Cal. Apr. 6, 2015) ("[I]t is plausible that [defendant's

20   compliance] would have prevented Plaintiff from suffering the loss of her home, ruined credit,

21   emotional distress, and a future inability to purchase a home.").

22         The Court, here, need not choose between these competing formulations.  Plaintiff's

23   allegation that Wells Fargo's attempt to foreclose is based on an erroneous payment history and

24   that Wells Fargo failed to substantiate Plaintiff's default because she made all her post-bankruptcy

25   payments is sufficient under any of them. Compl. at ¶¶ 31-35, 51-52.  Indeed, the primary purpose

26   of the statute is "[a]voiding foreclosure, where possible, will help stabilize the state's housing

27   market and avoid the substantial, corresponding negative effects of foreclosures on families,

28   

Law Office of Eric Andrew Mercer

8

communities, and the state and local economy. *See*, 2012 Cal ALS 86, 1.  Therefore, violations of

Sections 2923.55 and 2924.17 are material where foreclosure can be prevented by compliance with

these sections. *See, Mackensen v. Nationstar Mortg. LLC*, 2015 U.S. Dist. LEXIS 55608 (N.D.

Cal. Apr. 28, 2015); *see also, Rahbarian v. JP Morgan Chase*, 2015 U.S. Dist. LEXIS 63523, 7-8

(E.D. Cal. May 13, 2015)

     Wells Fargo cites three cases in support of its argument.  Motion at 6-7.  The first case,

*Rockridge Trust v. Wells Fargo NA*, 2014 U.S. Dist. LEXIS 22234 (N.D. Cal. Feb. 19, 2014),

provides no analysis of "materiality."  The second case, *Heflebower v. JPMorgan Chase Bank, NA*,

2014 U.S. Dist. LEXIS 29777 (E.D. Cal. Mar. 3, 2014), states that a Plaintiff must allege "actual

economic damages" citing to Section 2924.12(b).  However, Plaintiff, here, makes her claim under

Section 2924.12(a), which states," [i]f a trustee's deed upon sale has not been recorded, a borrower

may bring an action for injunctive relief…"  Cal. Civ. Code § 2924.12(a)(1).  Plaintiff does not

make her claim under Section 2924.12(b), therefore, she need not state actual economic damages to

maintain her claim.  The third case, *Colbert v. Sage Point Lender Servs., LLC*, 2014 U.S. Dist.

LEXIS 178468 (E.D. Cal. Dec. 29, 2014), states that plaintiff, in that case, failed to show "…how a

violation of the code sections caused harm."  However, Plaintiff, here, makes clear that that Wells

Fargo's attempt to foreclose is based on an erroneous payment history and that Wells Fargo failed

to substantiate Plaintiff's default because she made all her post-bankruptcy payments.  Compl. at ¶¶

31-35, 51-52.  In addition, *Colbert* states, "Plaintiff must allege actual economic harm to state a

claim pursuant to Cal. Civ. Code § 2924.12(a)."  However, the *Colbert* court simply gets wrong

here.  There is no requirement to plead actual economic damages under Section 2924.12(a).  The

entire purpose of Section 2924.12(a) is to provide an injunctive remedy to prevent an unnecessary

foreclosure.  Indeed, damages are not available under HBOR until a foreclosure has occurred.  *See*,

Cal. Civ. Code. § 2924.12(a),(b).

## C.    Plaintiff States A Rosenthal Act Claim

    Wells Fargo argues that its actions are not "debt collection" under the Rosenthal Fair Debt

Collection Practices Act, Civil Code § 1788, *et seq*. ("Rosenthal Act" or "RFDCPA").  Motion at

8-9.  The Ninth Circuit Court of Appeals, however, applied the Rosenthal Act in the context of a

1   loan servicer's collection activities concerning a HAMP mortgage modification agreement almost

2   identical to the facts as alleged here. *See Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 2013

3   (9th Cir. 2013) (stating "[t]he district court . . . correctly recognized that Wells Fargo was engaged

4   in debt collection") (*citing with approval Reyes v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

5   2235, 2011 WL 30759, at *20). Therefore, the Ninth Circuit has recognized that mortgage

6   servicers may be subject to the Rosenthal Act for collection activities surrounding a loan

7   modification agreement.

8          Indeed, this Court has held multiple times that the broad consumer protections of the

9   Rosenthal Act apply to mortgage servicers. *See, e.g, Esquivel v. Bank of Am., N.A.,* 2013 U.S. Dist.

10  LEXIS 153683 (E.D. Cal. Oct. 25, 2013); *Day v. American Home Mortgage Servicing*, 2010 U.S.

11  Dist. LEXIS 63033, at *7 (E.D. Cal. 2010) (complaint adequately alleges mortgage servicer is debt

12  collector under Rosenthal Act); *Vanduzen v. Homecomings Financial*, Case No., 2010 U.S. Dist.

13  LEXIS 46106, at *8 (E.D. Cal. 2010) (same). In *Walters v. Fidelity Mortgage of California, Inc.*,

14  730 F.Supp.2d 1185 (E.D. Cal. 2010), for example, plaintiff alleged that the mortgage servicer had

15  wrongfully claimed plaintiff was in default, failed to credit timely payments, wrongfully increased

16  the monthly payments, and foreclosed. *Id.* at 1191-94. Denying the servicer's motion to dismiss,

17  the Court reasoned that because "plaintiff's claim arises out of debt collection activities beyond the

18  scope of the ordinary foreclosure process, …a remedy may be available under the [Rosenthal

19  Act]." *Id.* at 1203.

20         Wells Fargo improperly conflates *the act of foreclosure* with other debt collection activity

21  and cites several cases for the position that to support that a nonjudicial foreclosure alone is

22  insufficient to support a claim under the Rosenthal Act. Motion at 9. But Plaintiff's Complaint

23  makes clear that the allegations supporting that act have nothing to do with a foreclosure itself.

24  *See*, Compl. at ¶¶ 31, 35, 58-59.

25         As noted above, the Ninth Circuit Court of Appeals has clearly held that collection activity

26  related to modification agreements is debt collection covered by the Rosenthal Act.

27  **D.      Plaintiff States an ECOA Notice Claim**

28  Defendant, again, completely ignores controlling case law in arguing that revocation of

Law Office of Eric Andrew Mercer

10

mortgage modification cannot be a violation due to Plaintiff's prior default on his original mortgage.  Motion at 9-10.  On facts almost identical to those alleged here, the Ninth Circuit has found a violation.  *See Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal. 2013).

The Equal Credit Opportunity Act ("ECOA") makes it unlawful to discriminate against an applicant on the basis of on the basis of race, color, religion, national origin, sex or marital status, or age; and because all or part of the applicant's income derives from any public assistance program.  15 U.S.C. § 1691(a).

One way that ECOA effectuates this goal is through its strict notice requirements.  *See Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal. 2013).  These strict notice provisions are designed to fulfill the twin goals of consumer protection and education. *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983); *see also Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) (ECOA is meant "to protect credit applicants and debtors from arbitrary denial or termination of credit").

The Fifth Circuit emphasized the legislature's rationale for the strict notice requirement:

> As explained in the Senate report accompanying the 1976 amendments to the ECOA, Congress viewed the strict notice requirement as: "a strong and necessary adjunct to the antidiscrimination purpose of the legislation, because if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Also allows rejected credit applicants to learn where and how their credit status is deficient.  The notice also provides an applicant a chance to rectify misinformation or inadequate information."

*Fischl,* 708 F.2d at 146.

It is well established that violations of ECOA's notice requirements provide a cause of action independent of any claims of discrimination. *See Dufay v. Bank of America*, 94 F.3d 561 (9th Cir. 1996)(notice violations alone support an ECOA claim); *Errico v. Pacific Capital Bank*, 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010)(procedural violations of the notice requirements provide a cause of action under ECOA); *Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986)(violation of ECOA regardless of whether defendant engaged in any discriminatory acts).  When a creditor fails to provide the required notices, the applicant may sue for a violation of

LAW OFFICE OF ERIC ANDREW MERCER

1  ECOA.  *See* 15 U.S.C. § 1691e; *see also Schlegel,* 720 F.3d at 1204, *citing with approval*

2  *Thompson v. Galles Chevrolet Co.*, 807 F.2d at 166 (which found that "[t]he ECOA 'sets forth

3  certain notification requirements a creditor must satisfy to be in compliance with the Act. If a

4  creditor fails to satisfy these requirements, he is in violation of the ECOA, regardless of whether he

5  engaged in any prohibited discriminatory action'").

6          **2.**       ***Wells Fargo Is A Creditor Under The ECOA And Applications For Loan***
                ***Modification Are Applications For Credit Under The ECOA***

7       As an initial matter, Wells Fargo is a creditor under the ECOA. A creditor includes "any

8  assignee of any original creditor who participates in the decision to extend, renew, or continue

9  credit." 15 U.S.C. § 1691a(e).  Regulation B defines "creditor" broadly as "a person who, in the

10  ordinary course of business, regularly participates in a credit decision, including setting the terms

11  of the credit." 12 C.F.R. § 202.2(1). By soliciting and purporting to review Plaintiff's (and other

12  borrowers) applications for loan modification multiple times, Wells Fargo "regularly arranges for

13  the extension, renewal, or continuation of credit." *See* 15 U.S.C. § 1691a(e).  Further, the Ninth

14  Circuit has made clear that mortgage servicers, like Wells Fargo, are subject to the ECOA.  *See*

15  *Schlegel v. Wells Fargo Bank*, 720 F.3d 1204 (9th Cir. Cal. 2013).

16       The overwhelming weight of authority, including this Court, has found that applications for

17  loan modifications are applications for credit under the ECOA. *See Cooksey v. Select Portfolio*

18  *Servicing, Inc.,* 2014 U.S. Dist. LEXIS 132074 (E.D. Cal. Sept. 17, 2014); *see also Vasquez v.*

19  *Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 161244 at *13 (N.D. Cal. Nov. 12, 2013) (holding that a

20  home loan modification request constitutes a "credit application" under ECOA). The Ninth Circuit,

21  assumes, without expressly deciding the issue, that a loan modification qualifies as a credit

22  application under the ECOA. *See Schlegel*, 720 F.3d at 1211.

23          **3.**       ***Wells Fargo Violated ECOA by Revoking Loan Modification***

24       Under the ECOA, when a lender takes an adverse action against an applicant, the applicant

25  is entitled to a statement of reasons for the action or a written notification of the adverse action that

26  discloses the applicant's right to a statement of reasons within thirty days after receipt of the

27  applicant's request. 15 U.S.C. § 1691(d)(2)(A)-(B). Adverse action means "a denial or revocation

28  of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in

LAW OFFICE OF ERIC ANDREW MERCER

1  substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The term

2  does not include a "refusal to extend additional credit under an existing credit arrangement where

3  the applicant is delinquent or otherwise in default." *Id.*; *see also* 12 C.F.R. § 202.2(c)(2)(ii)

4  (providing that the term adverse action does not include "any action or forbearance relating to an

5  account taken in connection with inactivity, default, or delinquency as to that account").

6       The Ninth Circuit has found that termination of a loan modification agreement constitutes

7  an adverse action. *Schlegel*, 720 F.3d at 1211; *see also Vasquez v. Bank of Am., N.A.*, 2013 U.S.

8  Dist. LEXIS 161244 (N.D. Cal. Nov. 12, 2013); *Schrupp v. Wells Fargo Bank, N.A.*, 2016 U.S.

9  Dist. LEXIS 91177 (E.D. Cal. July 13, 2016).  In *Schlegel*, the Ninth Circuit addressed a case with

10  facts almost identical to those here.  In *Schlegel*, Wells Fargo proposed a loan modification

11  agreement in bankruptcy, which the bankruptcy court approved.  *Id*. at 1206.  The bankruptcy was

12  discharged shortly thereafter.  *Id*.  Wells Fargo thereafter sent a default notice as it did in this case.

13  *Id*.  Wells Fargo, there, as it did here, promised correct the error, but failed to do so despite the

14  Schlegel's "repeated inquiries." *Id*.  at 1211.

15       The Ninth Circuit held that revocation of a loan modification agreement as alleged in that

16  case was sufficient to allege violations under ECOA.  *Id*.  The same facts are alleged here.  Wells

17  Fargo has no grounds to argue that this claim is insufficient.

18       **E.      Plaintiff States a UCL Claim**

19       The Unfair Competition Law prohibits, and provides civil remedies for unfair competition,

20  which it defines as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.

21  Code § 17200.  Its purpose "is to protect both consumers and competitors by promoting fair

22  competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

23  949 (2002).

24       ***1.      Plaintiff Properly Alleges Injury-in-Fact.***

25       To meet the standing requirements under the UCL, a party must (1) establish a loss or

26  deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and

27  (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or

28  false advertising that is the gravamen of the claim.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

Law Office of Eric Andrew Mercer

310, 322 (2011). The standing requirements originate from Proposition 64, which was designed to make sure that private attorneys could not bring abusive UCL claims on behalf of clients who had no actual business dealings with a defendant. Id. at 321. The Complaint indisputably alleges that Plaintiff had continued business dealings with the Defendant. Compl. at ¶¶ 22-35.

Economic injury from unfair competition can take numerous forms. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Kwikset*, 51 Cal. 4th at 323. First, Plaintiff's allegation that Wells Fargo improperly engaged in the nonjudicial foreclosure process represents a future property interest diminished is sufficient to confer standing under the UCL. *See, e.g., Rosenfeld v. JPMorgan Chase Bank*, N.A., 732 F. Supp. 2d 952, 973 (N.D. Cal. 2010) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under section 17200); *Sullivan v. Wash. Mut. Bank, FA*, No, 2009 U.S. Dist. LEXIS 104074 at *4-5 (N.D. Cal. Oct. 23, 2009) (same); *Rabb v. BNC Mortgage, Inc.*, 2009 U.S. Dist. LEXIS 92061, at *2 (C.D. Cal. Sept. 21, 2009) (same). That a plaintiff's economic injury come "as a result of" the unfair competition in its plain and ordinary sense means "caused by," and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset*, 51 Cal. 4th at 326. Here, Plaintiff has expressly alleged that they were harmed by Wells Fargo's refusal to honor its obligations under the Modification Agreement. Compl. at ¶¶ 37-41. As such, Plaintiff alleges sufficient damages to support his UCL claims. *See Corvello*, 728 F.3d 878 (allowing UCL claim where servicer violated its obligations under HAMP trial modification); *see also West*, 214 Cal. App. 4th 780, 805 (allowing UCL claim for violations of trial modification agreements).

Wells Fargo's citation to *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (Cal. App. 4th Dist. 2013) is inapposite. Motion at 10. In *Jenkins*, the Court addressed whether a borrower had standing to challenge a foreclosure based on the chain of title. *Id*. The *Jenkins* Court held that the plaintiff could not establish a causal link between the servicer's actions and her

Law Office of Eric Andrew Mercer

14

1   foreclosure.  *Id*.  Nothing in *Jenkins* deals with promises made in conjunction with a permanent

2   modification.  *Id*.

3      Wells Fargo's citation to *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 119 (N.D.

4   Cal. 2010) is likewise inapposite.  In this case, Plaintiff alleges she made all of her payments and

5   that there was no default; she did not "…[become] unable to keep up with monthly payments and

6   lacked the financial resources to cure the default…".  *Id*.

7      Here, there was a clear promise made by Wells Fargo to honor a permanent modification

8   and not to foreclose.  Plaintiff has a right to enforce those promises.

        **2.**      ***Plaintiff Sufficiently Alleges "Unlawful, Unfair and Fraudulent"***

9                  ***Practices***

10     The Complaint alleges that by violating the RFDCPA and ECOA, Wells Fargo has also

11  violated the UCL.  Compl. at ¶ 75.  An act is "unlawful" under California's UCL if it violates an

12  underlying state or federal statute or common law. *Cel-Tech Communications, Inc. v. Los Angeles*

13  *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).   Therefore, if the Court upholds Plaintiff's

14  RFDCPA claim the Court must also uphold Plaintiff's UCL claim.

15     Further, the Complaint alleges three "unfair" practices.  First, is Wells Fargo's promise to

16  honor Plaintiff's Modification Agreement and, instead, proceeding with the foreclosure process.

17  Compl. at ¶ 76.

18     Finally, the Complaint alleges that Wells Fargo made false statements when it promised to

19  honor the Modification Agreement upon completion of the bankruptcy, but failed to so honor.

20  Compl. at ¶ 77.  This allegation is sufficient to satisfy any of the three definitions under the UCL.

21  *See West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 306 (Cal. App. 4th Dist. 2013).  In

22  *West*, the Court held that allegations that a mortgage servicer "…wrongfully had trustee's sales

23  conducted when the borrower was in compliance with a [Modification Agreement]," were

24  sufficient to state a claim under any of the three definitions of the UCL.  *Id*.

25  **IV.**    **CONCLUSION**

26     The facts as alleged in the Complaint are sufficient to support each cause of action under

27  the "plausibility standard" set forth in *Iqbal, supra*, 129 S. Ct. 1937, and its progeny in this circuit.

28  *See Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011). Therefore, the Court should deny, in its

1  entirety, the motion to dismiss. At the very least, leave to amend should be granted.

2  Dated: August 25, 2017.                   Respectfully submitted,

3

4                                            LAW OFFICE OF ERIC ANDREW MERCER

5                                            By: */s/ Eric Andrew Mercer*

6

7                                                ERIC ANDREW MERCER

8                                                Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ERIC ANDREW MERCER

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on August 25, 2017.

Dated: August 25, 2017.                    Respectfully submitted,

                                           LAW OFFICE OF ERIC ANDREW MERCER


                                           By: */s/ Eric Andrew Mercer*
                                               ERIC ANDREW MERCER
                                               Attorney for Plaintiffs

MPA IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS

LAW OFFICE OF ERIC ANDREW MERCER