1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DEBRA LONDON, an individual,                    No.  2:17-cv-00687-KJM-AC

12                        Plaintiff,                  <u>ORDER</u>

13             v.

14    WELLS FARGO BANK, N.A., and DOES
      1 through 10, inclusive,[1]
15
                          Defendants.
16

17

18             Defendant Wells Fargo Bank, N.A. (Wells Fargo) moves to dismiss plaintiff Debra

19    London's complaint, which challenges Wells Fargo's attempted foreclosure of London's home.

20    ECF No. 24.  The court held a hearing on September 22, 2017.  ECF No. 34.  As explained

21    below, the court GRANTS in part and DENIES in part the motion, with leave to amend.

22    /////

23    /////

24    _____

25             [1] If defendants' identities are unknown when the complaint is filed, plaintiffs have an
      opportunity through discovery to identify them.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
26    1980).  But the court will dismiss such unnamed defendants if discovery clearly would not
      uncover their identities or if the complaint would clearly be dismissed on other grounds.  *Id.* at
27    642.  The federal rules also provide for dismissing unnamed defendants that, absent good cause,
      are not served within 90 days of the complaint.  Fed. R. Civ. P. 4(m).
28
                                                      1

I.     BACKGROUND

This case arises out of Wells Fargo's alleged failure to credit London for payments on her home loan, which resulted in Wells Fargo seeking to foreclose on London's home. *See* Compl. ¶ 1, ECF No. 1.

London owns real property in San Joaquin County (the Property), which is her principal and family residence. Compl. ¶¶ 7, 22. On June 30, 2009, she entered into a Loan Modification Agreement with Wells Fargo (the Modification Agreement). *Id.* ¶ 23. After missing several loan payments, London successfully filed for bankruptcy in January 2, 2011. *Id.* ¶ 24. She made her final bankruptcy payment on January 14, 2016, *id.* ¶ 25, and then made four post-bankruptcy monthly payments to her local Wells Fargo branch between February 26 and May 31, 2016. *Id.* ¶¶ 26–29. On June 30, 2016, her local Wells Fargo representative refused to accept her fifth payment. *Id.* ¶ 30. Wells Fargo "failed to provide a notice in writing explaining the reasons it would not accept London's June, 2016 payment." *Id.*

Over the next six months, Wells Fargo "provided a number of contradictory messages about the status of" London's loan. *Id.* ¶ 31. On the October 31, 2016 monthly mortgage statement, Wells Fargo stated London's loan "had been referred to foreclosure." *Id.* ¶ 32. On November 18, 2016, Wells Fargo directed another company "to file a Notice of Default with the County-Clerk Recorder," stating the amount owed "as of November 17, 2016 was $63,002.22." *Id.* ¶ 33. On March 1, 2017, Wells Fargo scheduled a trustee sale for April 5, 2017. *Id.* ¶ 34. For months, London asked Wells Fargo to correct its error and accept payments under the Modification Agreement, but to no avail. *Id.* ¶ 35. After London filed suit, the parties stipulated to a stay of foreclosure, and the court enjoined Wells Fargo from transferring any ownership interest or engaging in any foreclosure action during the pendency of this suit. ECF Nos. 21, 23.

London asserts the following claims against Wells Fargo: (1) breach of contract; (2) promissory estoppel; (3) California's Homeowners Bill of Rights ("HBOR") violations; (4) Rosenthal Fair Debt Collections Act violations; (5) Equal Credit Opportunity Act violations; and

(6) California's Unfair Competition Law violations.  *See* Compl. ¶¶ 36–81.  London has requested injunctive relief, specific performance, damages and restitution.  *Id.* at 14, ¶¶ 1–9.

Wells Fargo moves to dismiss the entire complaint.  *See* Mot. to Dismiss, ECF No. 24.  Wells Fargo contends the court lacks jurisdiction over the first five claims and that London has inadequately pleaded claims three, four, five and six.  *See id.* at 4–13.  London opposes the motion (Opp'n), ECF No. 29, and Wells Fargo has filed a reply, Reply, ECF No. 32.

## II.   JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Both parties ask the court to consider facts and documents beyond the complaint.  "The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the territorial jurisdiction, or (2) can be accurately and readily determined by trial courts from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court shall take judicial notice if requested by a party and supplied with the necessary information.  Fed. R. Evid. 201(c)(2).  Judicially noticed facts often consist of matters of public record.  *See, e.g.*, *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  Additionally, under the "incorporation by reference" doctrine, the court may take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other rounds* (quoting *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Courts may judicially notice facts of public record in a judicial or administrative proceeding that "direct[ly] relat[e] to the matters at issue," such as the existence of a motion or of representations made therein.  *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).  But the court may not judicially notice arguments, disputed facts or legal interpretations from those public proceedings.  *Id.* at 974.

### A.   London's Request

London asks the court to consider a redacted copy of a loan modification application attached as Exhibit 1 to the complaint.  Compl., Ex. 1.  Wells Fargo does not object to

3

London's request.  Because Exhibit 1 is referred to in the complaint, forms the basis of London's claims, and its authenticity is not reasonably in question, the court grants the request.

B.    Wells Fargo's Request

Wells Fargo requests the court judicially notice the following 11 exhibits, *see* ECF No. 24-1:

(A) Deed of Trust dated June 6, 2006, signed by London, and recorded in the official records of the San Joaquin County Recorder's Office on June 13, 2006, as DOC # 2006-127965.

(B) Certificate of Corporate Existence dated April 21, 2006, issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"), certifying that World Savings Bank, FSB, was a federal savings bank.

(C) Letter dated November 19, 2007, on the letterhead of the OTS authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB ("Wachovia").

(D) Charter of Wachovia Mortgage, FSB ("Wachovia"), effective December 31, 2007, and signed by the Director of the OTS, reflecting in Section 4 that Wachovia was subject to the Home Owner's Loan Act ("HOLA") and the OTS.

(E) Official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.

(F) Federal Deposit Insurance Corporation ("FDIC") website printout showing the history of World Savings Bank, FSB and its transition to Wells Fargo Bank, N.A.

(G) Chapter 13 Bankruptcy Petition No. 11-20148 filed on January 2, 2011, in United States Bankruptcy Court, Eastern District of California.

(H) Order Approving Settlement between the United States Trustee Program and Wells Fargo Bank, N.A. in Bankruptcy Case No. 11-33377 filed on November 19, 2015, in United States Bankruptcy Court, Central District of Maryland.

(I) Wells Fargo's Response to Notice of Final Cure Payment in Bankruptcy Case No. 11-20148-D-13 filed on March 10, 2016 in United States Bankruptcy Court, Eastern District of California.

(J) Notice of Default dated November 17, 2016, and recorded in the official records of the San Joaquin County Recorder's Office on November 18, 2016 as DOC # 2016-143125.

(K) Notice of Trustee's Sale dated March 3, 2017, and recorded in the official records of the San Joaquin County Recorder's Office on March 6, 2017 as DOC # 2017-026204.

London objects to judicially noticing Exhibits G, H, I, J and K, arguing, "[C]ourts may not judicially notice disputed factual assertions from separate proceedings." ECF No. 30 at 3; *see Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds*, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

Exhibits G, H and I are public records. The court may judicially notice that they exist. *See Robinson Rancheria*, 971 F.2d at 248; *Rey's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). But the court cannot judicially notice the facts or opinions recited within them. *See Lee*, 250 F.3d at 690 ("[W]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"); *Sokolsky v. Rostron*, No. CIV S-07-1002 GEB KJM P, 2009 WL 2705881, at *4 (E.D. Cal. Aug. 25, 2009) (findings and recommendations), *adopted*, No. 2:07-cv-1002-GEB-KJM P, 2009 WL 3241626 (E.D. Cal. Sept. 30, 2009) ("While the materials themselves are properly subject to judicial notice, this court cannot take notice of the truth of the facts recited in the court's opinion or of disputed facts outlined during the proceedings on remand.").

Judicial notice also is appropriate of Exhibits A, J and K because these documents too are a matter of public record. *See Lee*, 250 F.3d at 689; *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust and substitution of trustee because each was a public record). Moreover, London refers to the

contents of Exhibit J in her complaint, which provides another basis for the court to consider that exhibit here. *See* Compl. ¶ 33; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994) (documents not attached to complaint may be incorporated by reference if plaintiff referred to document in complaint or if document forms basis of plaintiff's claims).

As to Exhibits B through F, judicial notice is appropriate because "those documents reflect the official acts of the executive branch of the United States" and the information was "obtained from a governmental website." *Preciado v. Wells Fargo Home Mortgage*, No. 13–00382, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013); *Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008).

The court takes notice of Exhibits A through K.

III.    LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

IV.    ANALYSIS

    A.    Bankruptcy Court Jurisdiction

Wells Fargo attempts to rely on an order approving settlement in the case of *In re: Ernestine C.J. Green*, Case No. 11-33377, in the U.S. Bankruptcy Court, District of Maryland, to assert that the Maryland Bankruptcy Court retains exclusive jurisdiction over London's breach of

contract, promissory estoppel, HBOR and Rosenthal Fair Debt Collections Act claims. *See* Mot. at 4–5; Ex. H to Req. for Judicial Notice (RJN). Wells Fargo cites to paragraph 54 of the order, which states, "The Court shall retain exclusive jurisdiction over all matters subject to this order, including disputes arising under this Order, construction, interpretation, modification and enforcement of this Order, and shall retain exclusive jurisdiction to hear and adjudicate any motions related to this Order." *See* Ex. H to RJN at 17, ECF No. 24-2. London contends the actions she alleges Wells Fargo took occurred "*after the bankruptcy*," so the settlement order does not apply to her complaint. Opp'n at 6–7 (emphasis in original).

Wells Fargo's argument lacks merit. Just above the paragraph Wells Fargo cites, the Maryland court's settlement order states:

> The scope of the matters being resolved via this Order is limited to the Covered Conduct. This Order does not settle, resolve, or prejudice any other rights or claims against Wells Fargo, including claims arising under the National Mortgage Settlement pertaining to matters other than Covered Conduct. Notwithstanding any other provision of this Order, claims with respect to any criminal liability are especially reserved and are not released.

*See* Ex. H to RJN at 16–17, ¶ 53.

The same order defines "Covered Conduct" as actions involving either "[t]he timeliness of preparing and communicating Escrow Analyses to borrowers in Bankruptcy Cases" or different types of conduct involving "notice of any change in the payment amount required to be filed and served pursuant to Bankruptcy Rule 3002.1." *See id.* at 2–3. All forms of "Covered Conduct" are limited to "the Relevant Period," which is from December 1, 2011 through March 31, 2015. *See id.*

London's allegations do not involve any conduct by Wells Fargo between those dates. She alleges a Wells Fargo representative refused to accept her payment at a Wells Fargo branch in June 2016 and that Wells Fargo failed "to properly credit [London's] payments . . . ." Compl. ¶¶ 30, 39–40. London further alleges, "Wells Fargo claims that missed monthly payments from January to October 2016 comprises [sic] the amount due on the account." *Id.* ¶ 32. Thus, the bankruptcy court's order, by its own terms, does not govern London's allegations.

1    Wells Fargo's reliance on *Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir.

2    2000) also is misplaced.  There, the Ninth Circuit observed, "Plaintiffs are part of the *Hagen*

3    [settlement] class and asserted identical billing claims that occurred during the same time period."

4    *Id.* at 748.  Because the "[p]laintiffs' . . . claims cite the identical billing allegations as *Hagen*,"

5    the Ninth Circuit held "the district court properly refused to consider the billing claims" as

6    predicates for plaintiffs' claims.  *Id.* at 747–49.  Unlike the plaintiffs in *Howard*, London does not

7    assert identical claims to those raised in the *Green* bankruptcy settlement involving the same

8    "Relevant Period"; she alleges different conduct by Wells Fargo occurring at a different time.

9    *Compare* Ex. H to RJN at 2–3, *with* Compl. ¶¶ 26–35, 39–40.

10    Wells Fargo's motion to dismiss any of London's claims based on the purported

11    jurisdiction of the U.S. Bankruptcy Court, District of Maryland, related to *In re:  Ernestine C.J.*

12    *Green*, Case No. 11-33377, is DENIED.

13    B.    California's Homeowner's Bill of Rights (HBOR) (Claim 3)

14    London alleges Wells Fargo violated two California HBOR provisions.  Compl.

15    ¶¶ 51–53.  In part, HBOR prohibits "dual track" foreclosures, whereby a mortgage servicer

16    continues foreclosure proceedings while reviewing a borrower's loan modification application;

17    requires a single point of contact for borrowers negotiating a loan modification; and expands the

18    notice a servicer must provide to the borrower before the mortgage lender can take action on a

19    loan modification or pursue foreclosure.  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.

20    App. 4th 49, 86 n.14 (2013).  Two HBOR provisions are relevant here.  The first, California Civil

21    Code § 2923.55[2], requires the mortgage servicer's diligence in attempting to notify a homeowner

22    ───────────────
    [2] Repealed by Stats. 2013, c. 76 (A.B. 383), § 15, operative Jan. 1, 2018.  Because the
23    court finds London has failed to state a claim under section 2923.55, the court declines to reach
    the issue of the continued availability of this provision to London in light of California's "well
24    settled rule that an action wholly dependent on statute abates if the statute is repealed without a
    saving clause before the judgment is final."  *Younger v. Super. Ct.*, 21 Cal. 3d 102, 109
25    (1978) (citations omitted); *see S. Coast Reg'l Com. v. Gordon*, 84 Cal. App. 3d 612, 618–
    19 (1978) ("Without a saving clause or statutory continuity, a party's rights and remedies under a
26    statute may be enforced after repeal only where such rights have vested prior to repeal . . . , [and]
    a statutory remedy does not vest until final judgment[.]") (citations omitted); *see also Alaei v.*
27    *Rockstar, Inc.*, 224 F. Supp. 3d 992, 998–99 (S.D. Cal. 2016) (applying factors from *Zipperer v.*
    *Cty. of Santa Clara*,133 Cal. App. 4th 1013, 1023 (2005)); *Hass v. Citizens of Humanity, LLC*,
28

before recording a notice of default.  The second provision, § 2924.17, requires accurate and complete documents recorded or filed in any court be supported by "competent and reliable evidence."  The appropriate remedy, "[i]f a trustee's deed upon sale has not been recorded," is "an action for injunctive relief to enjoin a material violation of Section 2923.55 . . . or 2924.17."  Cal. Civ. Code § 2924.12(a)(1).[3]

Wells Fargo contends London has not pleaded facts showing either violation occurred, that either violation was material or that either violation caused her economic harm.  Mot. at 6–7.  London contends the violations did occur and were material because foreclosure could be prevented if Wells Fargo complies with HBOR.  Opp'n at 8–9 (citations omitted).  As discussed below, London has not stated a claim under either provision.

### 1.    Section 2923.55 Claim

Section 2923.55 requires that before recording a notice of default, a loan servicer must either (1) notify the borrower; or (2) diligently attempt to do so.  Cal. Civ. Code § 2923.55(a)(2).  The loan servicer must provide "[a] statement that the borrower may request" certain information, including a copy of the promissory note, the deed of trust, "any assignment . . . demonstrat[ing] the right of the mortgage servicer to foreclose[,]" and the borrower's payment history.  Cal. Civ. Code § 2923.55(b).  This provision is not satisfied by a "declaration;" it is satisfied only by a writing containing the proper information.  *Id.*  Additionally, the servicer must attach a declaration stating what contact with the borrower the servicer made or attempted.  Cal. Civ. Code § 2923.55(c).

London's claim cannot survive dismissal.  First, London has not alleged that Wells Fargo failed to satisfy the due diligence requirements set out in the statute.  *See* Cal. Civ. Code

---

No. 14-CV-1404 JLS (WVG), 2016 WL 7097870, at *3 (S.D. Cal. Dec. 6, 2016).  London may consider the continued availability of section 2923.55 or alternative HBOR provisions if she amends her complaint.

[3] Amended by Stats. 2014, c. 401 (A.B. 2763), § 7, eff. Jan. 1, 2015, operative Jan. 1, 2018.  Section 2924.12(a) formerly permitted enjoining "a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17," but now permits enjoining "a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17."

§ 2923.55(a)(2); *compare* Compl. ¶ 51, *with Landry v. Select Portfolio Servicing, Inc.*, No. 2:17-cv-02894-ODW (GJS), 2017 WL 3614423, at *6 (C.D. Cal. Aug. 22, 2017) ("Plaintiff plainly states in her complaint that 'SPS did not adequately conduct its required due diligence prior to filing [the Notice of Default].'").  London alleges merely that Wells Fargo "fail[ed] to provide notice to" London.  Compl. ¶ 51.  Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, London has failed to plead a claim under section 2923.55.

Second, even if London had pleaded a violation, London has not pleaded the violation was material, as is required to obtain injunctive relief.  Cal. Civ. Code § 2924.12(a)(1).  In other words, London has not "show[n] that [d]efendants' alleged violation affected her ability to avoid foreclosure," or "that [d]efendants thwarted her ability to be considered for foreclosure alternatives in violation of section 2923.55."  *Landry*, 2017 WL 3614423, at *6; *see also Kirkpatrick v. Wells Fargo Bank, N.A0.*, No. SACV1600074CJCKESX, 2016 WL 7496757, at *2 (C.D. Cal. June 28, 2016) ("With regard to the HBOR, courts have interpreted the term 'material' to refer to whether the violation affected the loan modification process.").  For this reason as well, London has not stated a claim under § 2923.55.

Wells Fargo has also asserted London's claim fails because she has not pleaded economic harm, citing *Colbert v. Sage Point Lender Services, LLC*, No. 1:14-cv-01626-LJO-JLT, 2014 WL 7409291, at *7 (E.D. Cal. Dec. 30, 2014).  Mot. at 6–7.  There, the court stated "[p]laintiff must allege actual economic harm to state a claim pursuant to [§ 2924.12(a)]."  *Colbert*, 2014 WL 7409291, at *7.  However, *Colbert* relies on *Heflebower v. JPMorgan Chase Bank, NA*, No. 1:12-cv-1671 AWI SMS, 2014 WL 897352, at *12–13 (E.D. Cal. Mar. 6, 2014), a case that addressed a claim under § 2924.12(b).  Section 2924.12(b) applies "[a]fter a trustee's deed upon sale has been recorded" and permits the court to "award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars."

Here, a trustee sale has not occurred.  Thus, § 2924.12(a), which provides only injunctive relief, applies.  The court disagrees with the *Colbert* court that § 2924.12(a), which does not permit a damages award, requires a plaintiff to plead economic harm.  Instead, the court

10

agrees with other courts addressing pleading standards under § 2924.12(a) for other HBOR claims. *See Chaghouri v. Wells Fargo Bank, N.A.*, No. 14-cv-01500-YGR, 2015 WL 65291, at *3 (N.D. Cal. Jan. 5, 2015) ("[S]ection 2924.12(a)'s enactment gives borrowers a right to obtain injunctive relief based upon violation of section 2924.17 regardless of any showing of pecuniary harm."); *Rahbarian v. JP Morgan Chase*, No. 2:14-cv-01488 JAM-KJN, 2014 WL 5823103, at *7 (E.D. Cal. Nov. 10, 2014) ("The Court holds . . . that Plaintiff need not plead harm to make a claim under section 2924.12(a) for a violation of section 2924.17.").

2. Section 2924.17 Claim

Section 2924.17 requires "a notice of default, [or] notice of sale . . . be accurate and complete and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17(a). "[A] mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Cal. Civ. Code § 2924.17(b).

London's claim under this section also cannot survive dismissal. She alleges "[Wells Fargo] violated section 2924.17 by failing to substantiate [London's] default and [Wells Fargo's] right to foreclose, when there is no basis to do so." Compl. ¶ 52. Again, London merely recites statutory language without any necessary support "by factual allegations." *Iqbal*, 556 U.S. at 679; *see Johnson v. PNC Mortg.*, No. C 14-02976 LB, 2014 WL 3962662, at *13 (N.D. Cal. Aug. 12, 2014) ("District courts have routinely held that conclusory [§ 2924.17] allegations are insufficient without some factual support.") (citing cases); *Baldoza v. Bank of Am., N.A .*, No. C-12-05966 JCS, 2013 WL 978268, at *13 (N.D. Cal. Mar. 12, 2013) (dismissing § 2924.17 claim where plaintiff alleged, "on information and belief, [that] Muradyan, a known robo-signer, was not an employee of MERS but instead was employed by Defendant BOA").

London also does not allege a "material violation" of section 2924.17, as required to obtain the injunctive relief provided by section 2924.12(a)(1). Although she need not plead, as Wells Fargo contends, any pecuniary harm, she must at least plead that § 2924.17 violations prevented her from avoiding Wells Fargo's initiating foreclosure. *See Chaghouri*, 2015 WL

65291, at *3; *Rahbarian*, 2014 WL 5823103, at * 7. London has not stated a claim under § 2924.17.

The court DISMISSES London's HBOR claim, but with leave to amend as explained below.

C.      California's Rosenthal Fair Debt Collection Practices Act Claim (Claim 4)

London alleges Wells Fargo violated California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), California Civil Code § 1788. Compl. ¶ 57. Specifically, London alleges "Wells Fargo made a false, deceptive, or misleading representation to [London] when it represented to [London], that if [London] made the Modification Agreement monthly payments to Wells Fargo, Wells Fargo would not attempt to collect on the original amount due under the promissory note or initial [sic] foreclosure proceedings." *Id.* ¶ 58. London also alleges "Wells Fargo used unfair or unconscionable means to collect or attempt to collect any debt when it attempted to collect on the original amount due under the promissory note, including taking nonjudicial action to effect dispossession, after compliance with the Modification Agreement." *Id.* ¶ 59.

The Rosenthal Act "is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1); *Colbert v. Sage Point Lender Services*, No. 1:14-CV-01626-LJO, 2014 WL 7409291, at *4 (E.D. Cal. Dec. 30, 2014). The Rosenthal Act incorporates provisions of the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, which prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). Thus, conduct by a debt collector that violates the FDCPA violates the Rosenthal Act as well. *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (finding whether communication "violates the Rosenthal Act turns on whether it violates the FDCPA").

Wells Fargo contends London has failed "to allege any conduct beyond non-judicial foreclosure," and the Rosenthal Act does not apply to non-judicial foreclosure. Mot. at

12

8–9.  London asserts that "collection activity related to modification agreements is debt collection covered by the Rosenthal Act."  Opp'n at 10.  As discussed below, London does not sufficiently plead this claim.

Although Wells Fargo, as the original lender, qualifies as a debt collector under the Rosenthal Act, the Rosenthal Act applies only if Wells Fargo's debt collection activities exceed the scope of the ordinary foreclosure process.  *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011).  Yet London's factual allegations for this claim refer to "initia[ting] foreclosure proceedings" and Wells Fargo's "taking nonjudicial action to effect dispossession," Compl. ¶¶ 58–59, which are all part of the ordinary foreclosure process.  *See Barria v. Wells Fargo Bank, N.A.*, No. 2:15-CV-01413-KJM-AC, 2016 WL 474319, at *6 (E.D. Cal. Feb. 8, 2016) (finding allegations "that defendant violated the Rosenthal Act by 'intentionally fail[ing] to contact [p]laintiffs to discuss foreclosure alternatives prior to recording a NOD,' 'fil[ing] a Declaration of Compliance that falsely asserted that they had diligently attempted to contact [p]laintiffs,' and 'attempting to collect interest, fees, or other charges from [p]laintiffs that are not expressly authorized by the agreement . . . or otherwise permitted by law' plead actions that are all "related to the execution of the nonjudicial foreclosure process").  London's generalized allegations that "Wells Fargo made a false, deceptive, or misleading representation" and that "Wells Fargo used unfair or unconscionable means to collect or attempt to collect any debt," Compl. ¶¶ 58–59, are insufficiently detailed to give Wells Fargo fair notice of any wrongful acts.  *See Twombly*, 550 U.S. at 555; *Barria*, 2016 WL 474319, at *6.

London's fourth claim for violations of the Rosenthal Act is DISMISSED, but with leave to amend.

D.    Equal Credit Opportunity Act Claim (Claim 5)

London alleges that Wells Fargo violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d)(2), when "Wells Fargo revoked [her] credit when it failed to accept [London's] June, 2016 payment in accordance with the Modification Agreement."  Compl. ¶¶ 66-70.  According to London, Wells Fargo's "failure to provide London with a statement of

reasons for the action taken on application for credit within 30 days from the revocation of credit in June 2016 violates ECOA." *Id.* ¶ 71.

ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status or age.'" *Schlegel v. Wells Fargo Bank,* 720 F.3d 1204, 1210 (9th Cir. 2013) (quoting 15 U.S.C. § 1691(a)(1)). As relevant here, ECOA also requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). An "adverse action" is a "denial or revocation of credit, a change in the terms of existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). When a creditor fails to give the required notice of taking an adverse action, the applicant may sue for a violation of ECOA. *Schlegel*, 720 F.3d at 1210.

Although the Ninth Circuit in *Schlegel* did not explicitly state that ECOA's notice provisions are distinct from the anti-discrimination provisions, courts in the Ninth Circuit have found the notice provisions can give rise to a claim even with no accompanying discrimination claims. *Errico v. Pac. Capital Bank, N.A.,* 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010); *Vasquez v. Bank of America, N.A.*, No. 13-cv-02902-JST, 2013 WL 6001924, at *11 (N.D. Cal. Nov. 12, 2013). This reading is supported by the regulations implementing ECOA, which provide in part, "The regulation prohibits creditor practices that discriminate on the basis of any of these [listed] factors. The regulation also requires creditors to notify applicants of action taken on their applications . . . ." 12 C.F.R. § 202.1(b); *see also Vasquez*, 2013 WL 6001924, at *11 ("The Federal Reserve regulations implementing ECOA appear to have two distinct requirements: a bar on discrimination in lending and a separate set of procedural notice and response requirements."); *Schlegel*, 720 F.3d at 1210 (referring to procedural notice requirements as "[o]ne way the ECOA effectuates" the goal of preventing discrimination by creditors against applicants).

Courts have found applications for loan modifications to be applications for credit under ECOA. *See, e.g., Vasquez*, 2013 WL 6001924, at *13 ("[T]he Federal Reserve has opined that loan modification requests under the Department of Treasury's Making Home Affordable

14

Modification Program ("HAMP") do qualify as 'credit applications' under ECOA, and that loan modifications outside the HAMP should be analyzed using the same factors.").

Wells Fargo contends that London's "delinquency under the terms of the Modification Agreement" prevents the ECOA notice requirements triggering in light of 15 U.S.C. § 1691(d)(6) and 12 C.F.R. § 202.2(c)(2)(ii). Mot. at 10. Section 1691(d)(6) explicitly states that the term "adverse action" does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default . . . ." Regulations implementing ECOA also state that the term "adverse action" does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(ii).

The court rejects Wells Fargo's argument for three reasons. First, London's allegations that Wells Fargo refused her June 30, 2016 payment and initiated foreclosure proceedings coincides more closely with "revocation of credit" under section 1691(d)(6), a type of adverse action, than with "a refusal to extend additional credit under an existing credit arrangement." Second, whether London is delinquent or in default is a disputed factual contention not properly resolved on a motion to dismiss. Taking the allegations as true, London was not delinquent or in default. *See* Compl. ¶¶ 26–30.

Third, Wells Fargo's position runs counter to controlling Ninth Circuit authority. In *Schlegel*, 720 F.3d at 1206, the Ninth Circuit faced facts quite similar to those alleged here. The plaintiffs there had obtained a loan, fell behind on their mortgage payments and filed a petition in bankruptcy. *Id*. Wells Fargo proposed a loan modification agreement, which the bankruptcy court approved. *Id*. The plaintiffs received a bankruptcy discharge. *Id*. Wells Fargo then sent a default notice to plaintiffs, indicating the loan "was 'in default for failure to make payments due.'" *Id*. The plaintiffs "contacted Wells Fargo, which 'told them not to worry, to sit tight and to proceed with the loan modification.'" *Id*. Despite the plaintiffs' making the required monthly payments and their repeated inquiry about the status of the modification agreement, Wells Fargo sent five default notices "threatening to commence foreclosure proceedings unless full payment was made." *Id*. at 1206–07. The Ninth Circuit held that Wells Fargo's

communication to plaintiffs "that it had accelerated their loan and was commencing foreclosure proceedings" was a communication that "[o]n its face, . . . revoked the prior credit arrangement." *Id.* at 1211. Although Wells Fargo had asserted "that its acceleration of the loan was an unintentional error, . . . such assertions do not erase its prior revocation of credit for purposes of ECOA." *Id.*

Here, London alleges she entered into a Loan Modification Agreement with Wells Fargo, filed a bankruptcy petition, completed a bankruptcy payment plan and then continued to make payments directly to Wells Fargo before it refused her June 2016 payment. Compl. ¶¶ 25-30. Under *Schlegel*, London has alleged that Wells Fargo took the adverse action of revoking her credit arrangement without proper notice under ECOA. *See id.* ¶¶ 66–71; *Schrupp v. Wells Fargo Bank, N.A.*, No. 2:16-00636 WBS KJN, 2016 WL 3753326, at *8 (E.D. Cal. July 13, 2016) ("Despite Wells Fargo's assertion that the ECOA does not apply because plaintiff was in default, plaintiff has sufficiently alleged that the modified loan agreement cured his prior default and he was current on his payments under the modified loan."); *compare* Compl. ¶¶ 25-30, *with Vasquez*, 2013 WL 6001924, at *12 (observing "[p]laintiff alleges that she had not been making her monthly payments for months" and "[t]his would appear to bar her claim").

Wells Fargo's citation to *Perryman v. JPMorgan Chase Bank, N.A.*, No. 116CV00643LJOSKO, 2016 WL 4441210, at *8 (E.D. Cal. Aug. 23, 2016), *order clarified*, No. 116CV00643LJOSKO, 2016 WL 6124209 (E.D. Cal. Oct. 19, 2016), does not alter this analysis. In *Perryman*, "[p]laintiff concedes he was in default at the time he submitted his loan modification application." *Id.* London disputes that she is or was in default or delinquent on her payments under the Loan Modification Agreement.

Wells Fargo's motion to dismiss London's fifth claim for violation of ECOA is DENIED.

E.    Unfair Competition Law Claim (Claim 6)

Wells Fargo moves to dismiss London's unfair competition law (UCL) claim, contending she lacks standing and has identified no fraudulent, unfair or unlawful practice. Mot. at 10–12.

1         1.     <u>Standing</u>

2         To have standing under California's UCL, plaintiffs must "(1) establish a loss or

3 deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and

4 (2) show that the economic injury the result of, i.e., caused by, the unfair business practice or

5 false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

6 310, 322 (2011) (emphasis removed).

7         The economic injury must be sufficient to constitute an "injury in fact" under

8 Article III of the Constitution, and the requisite injury must be "an invasion of a legally protected

9 interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

10 hypothetical." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir. 2009) (citing *Buckland v.*

11 *Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007)). In *Kwikset*, the court identified four

12 injuries that would qualify as economic injury under the UCL:

13
14            (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to
15            enter into a transaction, costing money or property, that would otherwise have been unnecessary.
16

17 51 Cal. 4th at 323.

18         After establishing loss, a plaintiff must show a "causal connection" between the

19 economic injury and the alleged unfair conduct. *Id.* at 326. A plaintiff cannot show causation if

20 she would have suffered "the same harm whether or not a defendant complied with the

21 law." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007); *see, e.g.*, *Jenkins v. JP*

22 *Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013) (no causal relations exist where

23 plaintiff's default triggered foreclosure and not defendant's action, though impending foreclosure

24 is an adequate economic injury).

25         Here, London pleads an injury in fact. London alleges, "[a]s a direct and

26 proximate result of Defendant's unlawful and unfair business practices, [London] has been

27 injured in fact and have [sic] lost money or property due to the foreclosure of her residence."

28 Compl. ¶ 78; *see Barria*, 2016 WL 474319, at *7. Loss of property alone, an economic injury,

satisfies the first prong of the standing requirement under the UCL.  *See Kwikset*, 51 Cal. 4th at 323.

London also alleges a causal connection between Wells Fargo's initiating foreclosing proceedings and the harm suffered as a result of Wells Fargo's allegedly unlawful, unfair or fraudulent business acts.  *See* Compl. ¶¶ 75–78.  But for Wells Fargo's allegedly refusing to accept London's timely payments and initiating foreclosure proceedings while London remained current under the Modification Agreement, London would not suffer the impending loss of her residence through foreclosure.  And but for Wells Fargo's alleged failure to provide sufficient notice to London under ECOA, London lacked a clear written statement of reasons for Wells Fargo's revocation of credit that would have enabled London to better attempt to avoid Wells Fargo's foreclosure proceedings.  Last, London's allegation that Wells Fargo's conduct was fraudulent because Wells Fargo "promised to honor a permanent modification under the Modification Agreement but failed to honor the permanent modification" is causally connected to London's suffered harm, the foreclosure proceedings initiated on her home.  *See* Compl. ¶ 77.  But for Wells Fargo's alleged failure to honor the Modification Agreement in light of London's alleged on-time payments under the Agreement, London would not suffer the impending loss of her residence through foreclosure.  The court DENIES Wells Fargo's motion to dismiss the UCL claim for lack of standing.

### 2.      Elements of  a UCL Claim

Wells Fargo also moves to dismiss this claim for inadequately identifying any "unlawful, unfair or fraudulent business act or practice," as is required to state a claim.  Mot. at 10–13; Cal. Bus. & Prof. Code § 17200.  Courts have construed the statute's language as prohibiting three distinct types of practices: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Here, London relies on all three prongs.  Opp'n at 13–15.

### a)      Unlawful

To allege a claim under the "unlawful" prong, a plaintiff must show a violation of some independent law.  *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

18

The predicate violation may be one of federal, state, local or common law. *Id.* (section 17200 "borrows" violations of other laws and treats them as actionable unlawful practices). Because the statute borrows violations of other laws, a failure to state a claim under the underlying law translates to a failure to state a claim under the unlawful prong. *See Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838–39 (1994).

Here, London alleges Wells Fargo's conduct violated the Rosenthal Act and ECOA. Compl. ¶ 75. Although the court has dismissed London's claim for violation of the Rosenthal Act, London has successfully pleaded a claim under ECOA. Thus, London states a claim under the unlawful prong of the UCL only to the extent it relies on ECOA.

b)      Unfair Acts

California courts have provided several definitions of "unfair" acts or practices under the UCL: (1) an act or practice where "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury consumers themselves could reasonably have avoided"; (2) a practice that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Vincent v. PNC Mortg., Inc.*, No. 14-00833, 2014 WL 2766116, at *8 (E.D. Cal. June 18, 2014) (citations omitted).

London's allegations satisfy the second unfairness test above, which is the relevant test when a consumer cites a business's conduct as unfair. By alleging that Wells Fargo was "refusing to accept timely payments and initiating foreclosure proceedings against [the Property] when [London] was current under the Modification Agreement," Compl. ¶ 76(a), London has pleaded a business practice that offends the public policy of honoring contract agreements and is substantially injurious to consumers. Failure to honor loan modification agreements and initiating foreclosure proceedings is "substantially injurious to consumers" because they are threatened with loss of their homes. Thus, London states a claim under the unfair acts prong of the UCL.

c)    <u>Fraudulent</u>

The fraudulent prong of the UCL is "'governed by the reasonable consumer test': a plaintiff may demonstrate a violation by 'show[ing] that [reasonable] members of the public are likely to be deceived.'"  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (citation omitted).  A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question."  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).  Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  At the same time, an unfair practice claim grounded in fraud must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (2003).  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."  In other words, a party must state with particularity "the who, what, when, where, and how" of the alleged fraudulent conduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, London alleges, "[d]efendant's conduct was fraudulent in that . . . [d]efendant's [sic] promised to honor a permanent modification under the Modification Agreement but failed to honor the permanent modification."  Compl. ¶ 77.  London presents only conclusory allegations of fraudulent conduct, failing to allege with particularity "the who, what, when, where, and how" required by the heightened pleading requirement of Rule 9(b).  Should London amend her complaint to include a UCL claim based on fraud, she must satisfy the requirements of Rule 9(b).

Wells Fargo's motion to dismiss London's UCL claim is GRANTED in part as to London's unlawful prong claim under the Rosenthal Act and her fraudulent prong claim.  But because London successfully pleads an unlawful prong UCL claim based on ECOA and an unfair prong UCL claim, the remainder of Wells Fargo's motion to dismiss London's UCL claim is DENIED.

F.    LEAVE TO AMEND

London asks for leave to amend her complaint if the court grants Wells Fargo's motion to dismiss. Opp'n at 16. Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and quotation marks omitted). Before granting leave, a court considers any potential bad faith, delay or futility regarding the proposed amendment, and the potential prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Absent prejudice, there is a strong presumption in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

Here, this is London's first complaint. Considering Rule 15(a)'s liberal amendment policy, and that Wells Fargo has identified no undue prejudice caused by allowing amendment, the court GRANTS London leave to amend to cure the issues identified above as to each dismissed claim, if possible subject to Federal Rule of Civil Procedure 11. The amended complaint is due within 21 days.

V.    CONCLUSION

Wells Fargo's motion to dismiss is GRANTED as to London's third claim for Homeowner's Bill of Rights violations (California Civil Code sections 2923.55 and 2924.17), London's fourth claim for Rosenthal Fair Debt Collection Practices Act violations, London's unlawful prong UCL claim relying on the Rosenthal Act, and London's fraudulent prong UCL claim. The remainder of Wells Fargo's motion to dismiss is DENIED. The court grants London LEAVE TO AMEND her complaint within 21 days of this order, consistent with the requirements of Federal Rule of Civil Procedure 11.

IT IS SO ORDERED.

DATED: January 29, 2018.

_____
UNITED STATES DISTRICT JUDGE