UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA LONDON an individual,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10 inclusive,<br><br>Defendants. | No. 2:17-cv-00687-KJM-AC<br><br>ORDER |

Defendant Wells Fargo Bank, N.A. (Wells Fargo) moves to dismiss certain claims in plaintiff Debra London's First Amended Complaint (FAC). Mot., ECF No. 38; *see* FAC, ECF No. 37. This is Wells Fargo's second motion to dismiss. *See* ECF No. 24; *London v. Wells Fargo Bank, N.A.*, No. 2:17-CV-00687-KJM-AC, 2018 WL 621262, at *1 (E.D. Cal. Jan. 29, 2018).

Wells Fargo moves to dismiss London's fourth claim for violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, and the fraudulent prong of London's sixth claim for violation of the Unfair Competition Law (UCL), California Business and Professions Code section 17200. The court previously dismissed these claims with leave to amend in its order on Wells Fargo's first motion to dismiss. *See London*, 2018 WL 621262, at *7-8, 12; *see also* ECF No. 36 at 12-13, 20.

/////

1

London opposes the motion. Opp'n, ECF No. 40. Wells Fargo has replied. ECF No. 42. Having reviewed the allegations of the First Amended Complaint and the parties' briefing, the court summarizes the parties' contentions and then orders as follows[1]:

I. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CLAIM 4)

Wells Fargo argues London has failed to remedy the defects identified by the court in its previous order. Mot. at 2-3 (citing ECF No. 36 at 13). In other words, it says, London has failed to plead any conduct that was not part of the ordinary foreclosure process. *Id.* London argues "the Ninth Circuit has recognized that mortgage servicers may be subject to the Rosenthal Act for collection activities surrounding a loan modification agreement," that multiple courts have upheld Rosenthal Act claims with similar facts to those London has alleged and the act of foreclosure is distinct from debt collection activity. Opp'n at 4-8. In reply, Wells Fargo advances a new argument that courts have held "that the Rosenthal Act [is] not applicable to residential mortgage loans." Reply at 2-3.

London has pleaded conduct distinct from the ordinary foreclosure process. Specifically, London has pleaded four "false, deceptive, or misleading misrepresentation[s]" by Wells Fargo's stating that London "owed" amounts "for overdue payment[s]," had a "delinquent amount due on [her] account" or represented amounts due that were not due, including an amount due that "comprises missed monthly payments" London alleges she actually paid. *See* FAC ¶¶ 32, 33, 35, 68-71; *see also id.* ¶¶ 25-30 (alleging successful monthly payments ranging from $5,391.18 to $5,896.41 from January 2016 to May 2016, then an attempted June 2016 payment in full rejected by Wells Fargo representative named Jyoti). These allegations differ from her allegations of false statements on her June 30, 2016 mortgage statement stating London failed to make payments from January 2016 to June 2016 "and that the home had been referred to foreclosure." FAC ¶¶ 31, 67. As a whole, London's allegations are similar to those other courts have found sufficiently allege debt collection activities beyond the scope of the ordinary

---

[1] To streamline orders where, as here, the parties have counsel and the court previously ruled on a motion to dismiss in the same case on the same claims, the court has adopted a shortened form of order.

2

foreclosure process under the Rosenthal Act. *See, e.g.*, *Walters v. Fid. Mortg. of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (reasoning "plaintiff's claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process" where "the gravamen of plaintiff's claim is that [loan servicer] engaged in a pattern of improper misconduct in the course of servicing her loan"); *Gumbs v. Litton Loan Servicing*, No. 209-CV-01159-GEB-GGH, 2010 WL 1992199, at *5 (E.D. Cal. May 13, 2010) (denying motion to dismiss Rosenthal Act claim where plaintiffs "allege[d] that [loan servicer] made deceptive phone calls, sent letters, and engaged in unlawful acts in an attempt to collect a debt it was not lawfully owed").

London also has pleaded similar allegations to those other courts have found state a plausible claim under the Rosenthal Act. For example, in *Schrupp v. Wells Fargo Bank, N.A.*, No. 2:16-00636 WBS KJN, 2016 WL 3753326, at *7 (E.D. Cal. July 13, 2016), the court reasoned multiple allegations in plaintiff's complaint showed Wells Fargo "engaged in conduct beyond enforcing the original deed of trust." For instance, the plaintiff had alleged Wells Fargo made "false, deceptive, or misleading" statements to plaintiff about providing him a loan modification if he made trial period plan payments. *Id.* And plaintiff alleged Wells Fargo used "unfair or unconscionable means to collect the debt when it attempted to collect on the original amount due under the promissory note rather than the modified agreement and provided mixed messages about whether the rejection of the modified payment in January 2012 was an error." *Id.* The court held plaintiff had "stated a plausible claim under the Rosenthal Act" and denied Wells Fargo's motion to dismiss. *Id.*

Here, London has pleaded Wells Fargo "used unfair or unconscionable means to collect or attempt to collect any debt when it attempted to collect amounts not owed under the [m]odification [a]greement" in amounts listed in June 30, 2016 and October 31, 2016 mortgage statements. FAC ¶¶ 72-73. The court finds these allegations similar to those in *Schrupp*, 2016 WL 3753326, at *7; *see also Webb v. Bank of Am., N.A.*, No. 2:13-CV-02006-MCE-AC, 2013 WL 6839501, at *6 (E.D. Cal. Dec. 23, 2013) (denying motion to dismiss Rosenthal Act claim where plaintiff alleged defendant "made demands for payment by sending letters" and "engaged in a pattern of improper conduct in the course of servicing her loan, including telling [p]laintiff

3

she [was] in default when she [was] not, which may ultimately lead to the foreclosure on her home").

Wells Fargo's attempt to distinguish *Schrupp* by observing this case does not involve a permanent modification and that *Schrupp* did not involve billing statements issued after referral to foreclosure are unconvincing. London's allegations fall under the statutory definition of "debt collection" under the Rosenthal Act. Under the Rosenthal Act, "debt collection" is "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b). "Consumer debt" is "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id.* § 1788.2(f). And a "consumer credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id.* § 1788.2(e). London has alleged this case involves modification of her mortgage "on the family home that she inherited from her father." FAC ¶ 1. London has therefore alleged debt collection practices by Wells Fargo sufficient to withstand a motion to dismiss.

Wells Fargo also cites many cases that stand for the general proposition that "foreclosing on a deed of trust does not invoke the statutory protections of the [Rosenthal Act]." *E.g.*, *Collins v. Power Default Servs., Inc.*, No. 09-4838 SC, 2010 WL 234902, at *3 (N.D. Cal. Jan. 14, 2010); *see* Mot. at 3-4. The court determined in its previous order that foreclosure alone was insufficient to state a claim under the Rosenthal Act. *See London*, 2018 WL 621262, at *7-8. Wells Fargo's citation to these new cases does not assist the court's analysis above.

Wells Fargo's reliance on this court's opinion in *Barria v. Wells Fargo Bank, N.A.*, No. 2:15-CV-01413-KJM-AC, 2016 WL 474319, at *6 (E.D. Cal. Feb. 8, 2016), does not assist Wells Fargo, either. In *Barria,* the court found "plaintiffs' allegations under the Rosenthal Act fail to allege any conduct beyond nonjudicial foreclosure." *Id.* The court observed that plaintiffs' allegations, including allegations that defendant was "attempting to collect interest, fees, or other charges from [p]laintiffs that [were] not expressly authorized by the agreement" were "related to the execution of the nonjudicial foreclosure process" and were "legal conclusions . . .

4

insufficiently detailed to give defendant fair notice of the wrongful acts." *Id.* (citing in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In contrast, London's factual allegations here include specific statements by Wells Fargo that were false, deceptive or misleading not because they violated an agreement, but because London had actually made the payments Wells Fargo claimed were still due. *Compare id.*, *with* FAC ¶¶ 68-71.

Wells Fargo cites 12 C.F.R. § 1026.41[2] and California Civil Code section 1788.14(c)[3] as support for its argument that Wells Fargo was required and permitted to send "periodic statements of account." Mot. at 3 n.1 (citing *Marcotte v. Gen. Elec. Capital Servs., Inc.*, 709 F. Supp. 2d 994, 999 (S.D. Cal. 2010)); Reply at 2 n.1. The court has reviewed Wells

---

[2] 12 C.F.R. § 1026.41(a)(2) states:

> Periodic statements. A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section. If a mortgage loan has a billing cycle shorter than a period of 31 days (for example, a bi-weekly billing cycle), a periodic statement covering an entire month may be used. For the purposes of this section, servicer includes the creditor, assignee, or servicer, as applicable. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this section to provide a periodic statement.

[3] California Civil Code section 1788.14 states, "No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:"

> . . . .
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

Fargo's cited statute and regulation. None of these provisions authorize Wells Fargo to send statements for amounts due that a debtor has already paid.

In reply, Wells Fargo argues for the first time that courts have held "that the Rosenthal Act [is] not applicable to 'residential mortgage loans.'" Reply at 2. This court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Nevertheless, to clarify this court's view on the state of the law, the court addresses this argument below.

The Ninth Circuit in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 885 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013), undermines Wells Fargo's position. There, Wells Fargo had offered a trial period plan to plaintiffs as a condition to obtaining a permanent mortgage modification, demanding and accepting payments under that plan. *Id.* at 880, 885. The Ninth Circuit held "the district court, while dismissing the claim on other grounds, correctly recognized that Wells Fargo was engaged in debt collection." *Id.* at 885. And the Ninth Circuit cited *Reyes v. Wells Fargo Bank*, N.A., No. C–10–01667JCS, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011), with approval. *Id.*

In *Reyes*, the court rejected the contention that defendant Wells Fargo, as a mortgage servicer, was not a debt collector under the Rosenthal Act. 2011 WL 30759, at *19-20. Although the *Reyes* court, as have many other district courts, reasoned the foreclosure process alone was "not actionable" under the Rosenthal Act, the court found allegations there were based "not on the mere act of foreclosure but rather, on allegedly deceptive statements" that were "beyond the scope of the ordinary foreclosure process." *Id.* at *20. Wells Fargo's reply does not fully account for the Ninth Circuit's recent clarification: all cases it cites but one pre-date *Corvello*, 728 F.3d at 885. *See* Reply at 2-3; *see also Esquivel v. Bank of Am., N.A.*, No. 2:12-CV-02502-GEB, 2013 WL 5781679, at *4 (E.D. Cal. Oct. 25, 2013) ("[A]lthough district courts have been divided on the issue of whether non-foreclosure collection efforts related to a mortgage are outside the scope of the Rosenthal Act, the Ninth Circuit has recently applied the Rosenthal Act in the context of a bank's collection activities concerning a [federal program] mortgage modification") (citing *Corvello*, 728 F.3d at 885).

6

The court DENIES Wells Fargo's motion to dismiss London's fourth claim for violations of the Rosenthal Act.

II. UNFAIR COMPETITION LAW: FRAUDULENT PRONG (CLAIM 6)

Wells Fargo contends London still has not satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b), failing to sufficiently plead misrepresentation: "the alleged 'promise[] to honor a permanent modification.'" Mot. at 5 (modification in motion) (citing FAC ¶ 91). Wells Fargo also argues "i[t] is unclear how [London] may have been deceived." *Id.* at 6. In opposition, London contends she "provides the 'who, what, when, where, and how' of the allegations supporting her claim for fraudulent conduct under the UCL." Opp'n at 11.

London sufficiently pleads her fraudulent prong UCL claim, correcting the deficiencies observed by this court previously. *See London*, 2018 WL 621262, at *12. Wells Fargo cites only one paragraph in London's complaint, *see* Mot. at 5-6 (citing FAC ¶ 91), but in other paragraphs London has expressly pleaded "the who, what, when, where and, how" required under Rule 9(b), *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Specifically, London pleads a course of conduct in which London makes post-bankruptcy monthly payments in full and on time to various Wells Fargo representatives. FAC ¶¶ 25-36. London even pleads the names of representatives for many of these payments or attempted payments. *See id.* ¶¶ 26-28, 30. In June 2016, a Wells Fargo representative named Jyoti refused to accept payment. *Id.* ¶ 30. Wells Fargo then made multiple false statements that London owed for overdue payments from January to June 2016. *Id.* ¶¶ 32-33, 35-36. After that, "over the next six months, Wells Fargo provided a number of contradictory messages about the status of [London's] loan," including that London "failed to make her monthly payments," that Wells Fargo "would investigate and correct the error causing rejection of the payment under the [m]odification [a]greement" and then a refusal "to correct the error" before agreeing yet again to correct the error. *Id.* ¶ 34. London has alleged as well that Wells Fargo made "false, deceptive, or misleading" representations to London when representing London had not made payments from January 2016 to May 2016. *Id.* ¶¶ 67-69.

London's factual allegations support her allegations of fraudulent conduct under the UCL, including that Wells Fargo "promised to honor a permanent modification under the [m]odification [a]greement" but failed to do so when it "failed to properly apply monthly payments" from January 2016 to May 2016. *Id.* ¶ 91(a). And London's factual allegations support her assertion that Wells Fargo "wrongfully scheduled a trustee sale." *Id.* ¶ 91(b). London's allegations, resolving all inferences in her favor, show "that [reasonable] members of the public are likely to be deceived." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (brackets in original) (internal quotation marks and citation omitted). Regardless, "[u]nlike common law fraud, a [UCL] violation can be shown even without allegations of actual deception, reasonable reliance and damage." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006), *as modified* (Nov. 8, 2006); *see also Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (stating "a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question"). In any event, whether a business practice is deceptive is usually a question of fact not appropriate for decision on a motion to dismiss. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

London's allegations are similar to those in *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 806 (2013). There, the California Court of Appeal held plaintiff's allegations, which included that defendant bank "made misrepresentations regarding a borrower's right and ability to challenge the bank's calculation of the [net present value]," "made misrepresentations about pending foreclosure sales" and "wrongfully had trustee's sales conducted when the borrower was in compliance with a [trial payment plan]," were sufficient to allege the defendant bank "engaged in unfair business practices under any of the three definitions." *Id.* Although Wells Fargo contends the full array of plaintiff's allegations in *West* distinguish that case, Mot. at 6, the court is not persuaded. A fraudulent prong UCL claim requires likely deception, and misrepresentation allegations satisfy that requirement.

Wells Fargo cites multiple California court opinions that do not discuss UCL claim standards. For instance, Wells Fargo's citation to *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976 (1997), *as modified* (July 30, 1997), is not relevant to a fraudulent prong UCL claim

at the motion to dismiss stage. In *Engalla*, 15 Cal. 4th at 974-76, the California Supreme Court addressed reliance for a fraudulent inducement claim. The standards there are not identical to a UCL claim. *See Daugherty*, 144 Cal. App. 4th at 838 ("Unlike common law fraud, a [UCL] violation can be shown even without allegations of actual deception, reasonable reliance and damage."). Wells Fargo's citation to *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515-16 (1994), discussing general differences between contract and tort law, also sheds no more light on London's sufficient pleading of a UCL claim than the other cases the court has cited above. The case of *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), discussing the general rule that a person "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations," also does not discuss a UCL claim, which is a statutory claim.

Wells Fargo's assertion that London was aware "before her bankruptcy was closed that Wells Fargo disputed the accounting according to her calculation," Mot. at 6, is not relevant to London's allegations of timely post-bankruptcy payments. *See* FAC ¶¶ 25-29; *see also London*, 2018 WL 621262, at *10 ("Here [even in her original complaint], London alleges she entered into a Loan Modification Agreement with Wells Fargo, filed a bankruptcy petition, completed a bankruptcy payment plan and then continued to make payments directly to Wells Fargo before it refused her June 2016 payment.").

For the first time in its reply brief, Wells Fargo contends it is "unclear what damages [London] seeks to recover in connection with her last claim." Reply at 5-6. But London has not requested damages. London seeks injunctive relief at least in part. FAC ¶ 95. "Prevailing plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (citing Cal. Bus. & Prof. Code § 17203). London also seeks restitution, but she has limited her claim for restitution to an "alternative to damages" and requested that restitution under California Business & Professions Code section 17203. FAC, Prayer for Relief ¶ 8. Thus, London has not requested "disgorgement of profits earned by [Wells Fargo] as a result of [its] allegedly unfair practices, even where the money sought to be disgorged was not taken from [London] and [London] did not have an ownership interest in the money." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

4th 1134, 1144 (2003). Under the UCL, London may recover restitution "necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. California courts have interpreted "may have been acquired" to "allow recovery without proof that the funds were lost as a result of actual reliance on deceptive conduct." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)). At the pleading stage, London need not elect her recovery. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (concluding a quasi-contract restitution claim should not be dismissed even if it is "duplicative of or superfluous to [plaintiff's] other claims") (citing Fed. R. Civ. P. 8(d)(2)).

The court DENIES Wells Fargo's motion to dismiss London's sixth claim for an unfair prong UCL violation.

III. CONCLUSION

The court DENIES Wells Fargo's motion to dismiss in its entirety. Wells Fargo shall file its answer within twenty-one (21) days. This resolves ECF No. 38.

IT IS SO ORDERED.

DATED: September 5, 2018.

_____
UNITED STATES DISTRICT JUDGE